UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DOROTHY A. HEMPHILL,

        Plaintiff,

v.                                                                                               Case No. 11-C-00743

CITY OF MILWAUKEE,
CRAIG ELLIS AND
JANE ROE,

        Defendants.

## ANSWER OF DEFENDANTS
## CITY OF MILWAUKEE AND CRAIG ELLIS
## TO FIRST AMENDED COMPLAINT

NOW COMES defendants City of Milwaukee and Craig Ellis, by their attorney, Grant F. Langley, City Attorney, by Susan E. Lappen, Assistant City Attorney, and as and for their answer to plaintiff's complaint, admit, deny, allege and state to the court as follows:

## **ANSWER**

1.    Answering paragraph 1, assert that the allegations contained therein call for legal conclusions, to which these answering defendants need not respond further.

2.    Answering paragraph 2, assert that the allegations contained therein call for legal conclusions, to which these answering defendants need not respond further.

3. Answering paragraph 3, assert that the allegations contained therein call for legal conclusions, to which these answering defendants need not respond further.

4. Answering paragraph 4, admit the allegations contained therein.

5. Answering paragraph 5, admit that the City of Milwaukee is a municipal corporation under the laws of the State of Wisconsin and that the City of Milwaukee Police Department is a subdivision of the City of Milwaukee, but assert that Milwaukee police officers are employed by the City of Milwaukee; deny that the City of Milwaukee Police Department "employs" Milwaukee police officers.

6. Answering paragraph 6, admit that Craig Ellis is and was at all relevant times employed by the City of Milwaukee as a detective, assigned to the Milwaukee Police Department; admit that Detective Ellis is a resident of the City of Milwaukee, County of Milwaukee, and State of Wisconsin; assert that any remaining allegations call for legal conclusions, to which these answering defendants need not respond further.

7. Answering paragraph 7, lack information and knowledge to form a belief as to the truth or falsity of any allegations regarding a "Jane Roe," and therefore deny the same; affirmatively assert that Detective Ellis' coworker, who participated in Mrs. Hemphill's arrest, was Detective Cheryl Welch.

8. Answering paragraph 8, admit that at all times relevant to the subject matter of this litigation, Detective Ellis and any other MPD detective were acting as police detectives employed by the City of Milwaukee, and that therefore they were acting under color of law and pursuant to their authority as police detectives, and in their official

capacity; as to any allegations regarding "Jane Roe," lack information and knowledge necessary to form a belief as to the truth or falsity of same, and therefore deny the same.

9. Answering paragraph 9, admit that Ms. Hemphill is in hear early seventies, as she was born in 1938; admit that upon information and belief, she and her husband live in a home located at 5539 N. 26th Street in Milwaukee, Wisconsin; lack information and knowledge necessary to form a belief as to the truth or falsity of any remaining allegations, and therefore deny the same.

10. Answering paragraphs 10 and 11, at this stage of litigation, lack information and knowledge necessary to form a belief as to the truth or falsity of the allegations contained therein, and therefore deny the same.

11. Answering paragraph 12, admit that a civil dispute existed and still exists; assert that a citizen complaint led to a criminal investigation of the matter by Detectives Craig Ellis and Cheryl Welch; lack information and knowledge regarding claims against "Jane Doe," and therefore deny the same.

12. Answering paragraph 13, reallege as if fully restated herein the above paragraphs.

13. Answering paragraph 14, at this stage of litigation, lack information and knowledge necessary to form a belief as to the truth or falsity of the allegations contained therein, and therefore deny the same.

14. Answering paragraph 15, deny the assertion that the detectives "did not have probable cause to suspect that Ms. Hemphill committed a crime or probable cause to arrest Ms. Hemphill for any crime," as alleged or otherwise, but rather assert that

Detective Ellis' investigation did support his determination that probable cause existed to believe that Ms. Hemphill had committed at least one crime; admit that Detective Ellis and a fellow detective, Cheryl Welch, did come to Ms. Hemphill's home, for the purpose of arresting her; admit that neither Detective Ellis nor Detective Welch had a warrant to search Ms. Hemphill's home, or a warrant for her arrest; deny any remaining allegations.

15. Answering paragraph 16, deny the allegations contained therein, and affirmatively assert that at no time while at her own home did Ms. Hemphill indicate that she had an attorney, or that she did not want to speak with the police without her attorney present.

16. Answering paragraph 17, deny the allegations contained therein, but rather assert that Ms. Hemphill was arrested pursuant to probable cause, and brought to the main downtown police station for questioning; admit that Ms. Hemphill was placed in handcuffs, and escorted to the detectives' car; deny any remaining allegations.

17. Answering paragraph 18, deny that Ms. Hemphill asked to speak to any attorney while she was being escorted to the squad car; admit that she did ask to phone her husband, but was told she could not call him, and that she was allowed to phone her husband after she was booked and processed.

18. Answering paragraph 19, deny the allegations contained therein, but rather, assert that before leaving her home, Ms. Hemphill indicated that she wanted her folder of legal and other documents, to assist her in answering questions at the police station, and Ms. Hemphill was allowed to obtain the folder; Ms. Hemphill willingly gave the folder to

Detective Ellis, who placed the folder and its contents on police inventory, as evidence of her crimes; deny any remaining allegations.

19. Answering paragraph 20, deny the allegations contained therein, but rather affirmatively assert that before leaving her home, Ms. Hemphill was asked if she needed to take any medication, and that she responded that she did not need to take her medication. Also, she was allowed to change clothes, use the restroom and brush her hair before leaving her home.

20. Answering paragraph 21, admit that Ms. Hemphill, along with Detective Ellis and Detective Welch, arrived at the main downtown police station at approximately 9:20 a.m. on July 29, 2011; deny that Ms. Hemphill ever informed either of the detectives that she did not want to speak with them without her lawyer present; admit that the detectives did question Ms. Hemphill for approximately 45 minutes; deny that Ms. Hemphill was questioned for "the next several hours,"; assert that after she provided a statement to the detectives, Ms. Hemphill was processed and then released from the district station at approximately 3:30 p.m., and that upon her request, Detective Ellis arranged for a phone call to be placed to Ms. Hemphill's husband, so that her husband could give her a ride home; deny any remaining allegations.

21. Answering paragraph 22, deny that the Detectives "confiscated" any file, but rather assert that Ms. Hemphill willingly gave the file to the detectives; admit that the detectives refused to return the contents of that file to Ms. Hemphill, and that they placed it on police inventory; deny any remaining allegations.

5

22. Answering paragraph 23, deny that at any time Ms. Hemphill was "imprisoned,"; assert that Ms. Hemphill was questioned while she was in custody at the police station with the detectives; admit that Ms. Hemphill's admitted activities did constitute violations of the State of Wisconsin criminal statutes; deny any remaining allegations.

23. Answering paragraph 24, deny that the courts "have jurisdiction to grant leave to police officers to file criminal and quasi-criminal complaints against arrested persons," as alleged or otherwise, but rather assert that prosecutors make the determination as to whether or not criminal complaints or quasi-criminal complaints are filed against arrested persons; admit the remaining allegations.

24. Answering paragraph 25, assert that the phrase "have jurisdiction to admit arrested persons to bail" is vague and ambiguous, and therefore, these answering defendants cannot answer same; admit that Ms. Hemphill did not make bail or post bond; but rather, assert that Ms. Hemphill was released on her own recognizance, after she provided a statement to the detectives and she was booked and processed; admit that the courts mentioned in paragraph 24 of the complaint were in session during some or all of the period that Ms. Hemphill was questioned by the detectives; deny any remaining allegations.

25. Answering paragraph 26, deny that Ms. Hemphill "repeatedly asked Detectives Ellis and Roe to call her family or her attorney," as alleged or otherwise; deny any remaining allegations, and assert that Mr. Hemphill was called for Mrs. Hemphill after she was released from custody.

26. Answering paragraph 27, admit that at the time Ms. Hemphill was released from the officers' custody at the police district station, that she had not yet been charged with any crime, that she was released without any criminal charge being made against her, and that at the time of the filing of this answer, no criminal charge has yet been made against her; deny any remaining allegations.

27. Answering paragraph 28, deny that either Detective Ellis or Detective Welch "searched" Ms. Hemphill's home, as alleged or otherwise; admit that neither Detective Ellis nor Detective Welch had any search warrant, regarding Ms. Hemphill's home, or any arrest warrant, regarding the arrest of Ms. Hemphill; lack information and knowledge necessary to form a belief as to the truth or falsity of any remaining allegations, and therefore deny the same.

28. Answering paragraph 29, admit that Detective Ellis and Detective Welch, at all times relevant to the subject matter of this litigation, acted under color of law, and within his official capacities; deny that any of the detectives' actions were beyond the scope of their jurisdiction or without lawful authority; lack information and knowledge necessary to form a belief as to the truth or falsity of any remaining allegations, and therefore deny the same.

29. Answering paragraph 30, deny that either detective violated any right of Ms. Hemphill, as alleged or otherwise; lack information and knowledge necessary to form a belief as to the truth or falsity of any allegation regarding "Roe," as alleged or otherwise, and therefore deny same.

30. Answering paragraph 31, deny that Ms. Hemphill is entitled to any recovery whatsoever, including attorneys fees, as alleged or otherwise.

31. Answering paragraph 32, reallege as if fully restated herein the above paragraphs.

32. Answering paragraph 33, deny that Ms. Hemphill's home was "searched," as alleged or otherwise; deny that either Detective Ellis or Detective Welch unlawfully or without cause took possession of Ms. Hemphill's legal papers, as alleged or otherwise, but affirmatively assert that Ms. Hemphill willingly gave her file of papers to Detective Ellis; deny any remaining allegations.

33. Answering paragraph 34, deny that Ms. Hemphill's home was unlawfully entered or searched, as alleged or otherwise; deny that Ms. Hemphill was unlawfully arrested, as alleged or otherwise; deny that Ms. Hemphill was unlawfully seized, as alleged or otherwise; deny any remaining allegations.

34. Answering paragraph 35, assert that the allegations contained therein call for legal conclusions, to which these answering defendants need not respond further.

35. Answering paragraph 36, assert that the allegations contained therein call for legal conclusions, to which these answering defendants need not respond further.

36. Answering paragraph 37, admit all allegations, as to Detective Ellis, but assert that he does not personally have possession of her papers, but rather, they have been inventoried as evidence; as to any allegations regarding "Roe," lack information and knowledge necessary to form a belief as to the truth or falsity of such allegations, and therefore deny the same.

37. Answering paragraph 38, reallege as if fully restated herein the above paragraphs.

38. Answering paragraph 39, deny that Ms. Hemphill's home was "searched," as alleged or otherwise; deny that either Detective Ellis or Detective Welch unlawfully or without cause took possession of Ms. Hemphill's legal papers, as alleged or otherwise, but affirmatively assert that Ms. Hemphill willingly gave her file of papers to Detective Ellis; deny any remaining allegations.

39. Answering paragraph 40, deny that Ms. Hemphill's home was unlawfully entered or searched, as alleged or otherwise; deny that Ms. Hemphill was unlawfully arrested, as alleged or otherwise; deny that Ms. Hemphill was unlawfully seized, as alleged or otherwise; deny any remaining allegations.

40. Answering paragraph 41, assert that the allegations contained therein call for legal conclusions, to which these answering defendants need not respond further.

41. Answering paragraph 42, assert that the allegations contained therein call for legal conclusions, to which these answering defendants need not respond further.

42. Answering paragraph 43, admit all allegations, as to Detective Ellis, but assert that he does not personally have possession of her papers, but rather, they have been inventoried as evidence; as to any allegations regarding "Roe," lack information and knowledge necessary to form a belief as to the truth or falsity of such allegations, and therefore deny the same.

43. Answering paragraph 44, reallege as if fully restated herein the above paragraphs.

44. Answering paragraph 45, deny that Ms. Hemphill was unlawfully handcuffed, arrested or interrogated, as alleged or otherwise; deny any remaining allegations.

45. Answering paragraph 46, deny that any action of any defendant was unlawful, as alleged or otherwise; deny any remaining allegations.

46. Answering paragraph 47, deny that Ms. Hemphill "demanded that she be released from custody;" deny that defendants "refused her demand;" assert that Ms. Hemphill was released from police custody after she had been booked, questioned and processed.

47. Answering paragraph 48, deny that Ms. Hemphill's civil rights were violated, as alleged or otherwise; deny any remaining allegations.

## AFFIRMATIVE DEFENSES

AS AND FOR AFFIRMATIVE DEFENSES, defendants the City of Milwaukee and Craig Ellis allege and state to the court as follows:

1. the plaintiff's complaint fails to state a claim upon which relief can be granted;

2. the detectives acted in good faith, without malice, and pursuant to their duties as law enforcement officers, and they are therefore immune from liability to the plaintiff, pursuant to the doctrine of qualified immunity;

3. the actions of any City of Milwaukee employee or agent were discretionary or quasi-judicial or quasi-legislative in nature, and are therefore immune from liability, pursuant to Wis. Stat. § 893.80; and

4. the amount of liability of the City of Milwaukee, if any, regarding any state-law claims, is limited pursuant to Wis. Stat. § 893.80.

WHEREFORE, defendants the City of Milwaukee and Craig Ellis demand judgment as follows:

1. dismissing the complaint of the plaintiff on its merits, together with costs and disbursements; and

2. for such other and further relief as the court may deem just and equitable.

## JURY DEMAND

Defendants the City of Milwaukee and Craig Ellis demand a trial by jury of 12 of all issues so triable.

Dated and signed at Milwaukee, Wisconsin this 9th day of September, 2011.

        GRANT F. LANGLEY
        City Attorney


        s/Susan E. Lappen
        SUSAN E. LAPPEN
        Assistant City Attorney
        State Bar No. 01003567
        Attorney for Defendants
        City of Milwaukee and Craig Ellis

P.O. ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
(414) 286-2601
Fax: (414) 286-8550
slappe@milwaukee.gov

1032-2011-2157:173493